IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE RIVERWALK SEAFOOD GRILL INC, D/B/A RIVERSIDE BANQUETS, individually And on behalf of all other similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA<br><br>Defendant. | Case No. 20-3768<br><br>Jury Trial |

# CLASS ACTION COMPLAINT

**NOW COMES,** THE RIVERWALK SEAFOOD GRILL INC., doing business under the assumed name RIVERSIDE BANQUETS ("Plaintiff" or "Riverside") individually and on behalf of all others similarly situated brings this CLASS ACTION COMPLAINT against TRAVLERS CASUALTY INSURANCE COMPANY OF AMERICA ("Travelers") and states as follows:

## INTRODUCTION

1.  Plaintiff individually, and behalf of all other similarly situated are the are owner and operator of business in Kane County Illinois, ho have been forced, by recent orders issued by the State of Illinois, to cease their operations—through no fault of their own—as part of the State's efforts to slow the spread of the COVID-19 global pandemic. The closures mandated by these orders present an existential threat to these small, local businesses throughout the country.

2.  To protect their businesses from situations like these, which threaten their livelihoods based on factors wholly outside of their control, Plaintiffs obtained business

interruption insurance from Traveler's In blatant breach of its insurance obligations that it voluntarily undertook in exchange for Plaintiffs' premium payments, Traveler's has denied Plaintiffs' claims arising from the State-ordered interruption of their business.

3. As a result, Plaintiffs now bring this action against Traveler's for its failure to honor its obligations under commercial business owners insurance policies issued to Plaintiffs, which provide coverage for losses incurred due to a "necessary suspension" of their operations, including when their businesses are forced to close due to a government order.("Civil Authority Coverage")

4. On March 15, 2020, during the term of the policies issued by Traveler's to Plaintiffs, Illinois Governor Pritzker issued an order first closing all restaurants, bars, and movie theaters to the public in an effort to address the ongoing COVID-19 pandemic. A few days later, on March 20, 2020, Governor Pritzker ordered all "non-essential businesses" to close. The March 15 and March 20 orders are hereinafter collectively referred to as the "Closure Orders."

5. As a result of the Closure Orders, the Plaintiffs have been forced to halt ordinary operations, resulting in substantial lost revenues.

6. But despite Traveler's express promise in its policies to cover the Plaintiffs' business interruption losses when the government forces them to close, Traveler's has issued blanket denials to Plaintiffs for any losses related to the Closure Orders.

7. Traveler's continually asserts that Plaintiffs' losses are not covered, based on the assertion that the "actual or alleged presence of the coronavirus," which led to the Closure Orders that prohibited Plaintiffs from operating their businesses, does not constitute "direct physical loss." See "Exhibit A."

8. But Traveler's conclusory statement that the actual or alleged presence of a substance like COVID-19 does not result in property damage is contrary to the law in Illinois.

Illinois courts have consistently held that the presence of a dangerous substance in a property constitutes "physical loss or damage." See, e.g., *Bd. of Educ. of Twp. High Sch. Dist. No. 211 v. Int'l Ins. Co.,* 720 N.E.2d 622, 625–26 (Ill. Ct. App. 1999), as modified on denial of reh'g (Dec. 3, 1999).

9. Thus, Traveler's wholesale, cursory coverage denials are arbitrary and unreasonable, and inconsistent with the facts and plain language of the policies it issued. These denials appear to be driven by Traveler's desire to preempt its own financial exposure to the economic fallout resulting from the COVID-19 crisis, rather than to initiate, as Traveler's is obligated to do, a full and fair investigation of the claims and a careful review of the policies they sold to Plaintiffs in exchange for valuable premiums.

### I. THE PARTIES

*Plaintiff*

10. Plaintiff The Riverwalk Seafood Grille, Inc. is a corporation organized under the laws of Illinois, with its principal place of business in Kane County, Illinois. Plaintiff is doing business under the Assumed Name Riverside Banquets and is an Additional Insured under the Policy. See "Exhibit B". Plaintiff hosts weddings, corporate events, and other special events serving food and beverages.

*Defendant*

11. Defendant Traveler's is an insurance company organized under the laws of the State of Connecticut, with its principal place of business in Hartford Connecticut Illinois.

### II. JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because Defendant and at least one member of the Class are citizens of different states and because: (a) the

Class consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

13. This Court has personal jurisdiction over Traveler's pursuant to the Illinois "long arm statute," 735 ILCS 5/2-209, because Traveler's has submitted to jurisdiction in this state by: (a) transacting business in Illinois; (b) contracting to insure a person, property or risk located within Illinois at the time of contracting; and (c) making a contract substantially connected with Illinois. See 735 ILCS 5/2-209(1), (4), (7).

14. In addition, Traveler's exercises substantial, systematic and continuous contacts with Illinois by doing business in Illinois, serving insureds in Illinois, and seeking additional business in Illinois.

15. This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties as to their respective rights and obligations under the Policy with respect to the loss of business arising from the civil authority events detailed below.

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omission giving rise to Plaintiffs' claims occurred within the Northern District of Illinois.

### III. FACTUAL BACKGROUND

17. Traveler's issued Policy #YO630-0K557677 for the Policy Period of 1/1/20 to 1/1/21 to the Shodeen Group LLC and numerous Additional Insureds including Plaintiff. See Exhibit A

18. The Policy Provided the following coverages:

**DELUXE BUSINESS INCOME (AND EXTRA EXPSPENSE) COVERAGE FORM**

### A. COVERAGE

We will pay for:

- The actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration"; and
- The actual Extra Expense you incur during the "period of restoration"; caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income and Extra Expense Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

\*\*\*

See Deluxe Business Income (and Extra Expense) Coverage Form (DX T1 01 11 12) at page 1 (emphasis added).

\* \* \* \* \*

### 4. Additional Coverages

### c. Civil Authority

- When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and the actual Extra Expense you incur caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:

- Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than 100 miles from the damaged property; and

- The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

\*\*\*

See Deluxe Business Income (and Extra Expense) Coverage Form (DX T1 01 11 12) at pages 2-3 (emphasis added).

\* \* \* \* \*

### 5. Coverage Extensions

### b. Ingress or Egress

(1) You may extend the insurance provided by this Coverage Form for:

      (a) The actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration"; and

      (b) The actual Extra Expense you incur during the "period of restoration"; to apply to the actual amount of such loss of Business Income and Extra Expense that you incur when ingress to or egress from the described premises is prevented (other than as provided in the Civil Authority Additional Coverage).

  (2) The prevention of ingress to or egress from the described premises must be caused by direct physical loss or damage by a Covered Cause of Loss to property that is away from, but within 1 mile of the described premises, unless a different number of miles is shown in the Declarations. . . .

See Deluxe Business Income (and Extra Expense) Coverage Form (DX T1 01 11 12) at pages 5-6

**Closure Orders Throughout the United States and World**

19.     Closure Orders were also issued by local, state, provincial or national jurisdictions of Class Members throughout the United States. A non-comprehensive list, for illustration, includes the following states and countries where Class Members have Covered Properties:

- California, Connecticut, Florida, Georgia, Illinois, New Jersey, New York, Pennsylvania and Virginia; and

20.     A major news outlet reported that, as of April 3, 2020, over 3.9 billion people had been asked or ordered to stay at home, from over 90 countries or territories.[1]

**The Impact of COVID-19 and the Closure Orders**

21.     The presence of COVID-19 caused direct physical loss or damage to Plaintiff's and the other Class Members' property, by impairing and damaging the property, and by causing a "suspension" of business operations during the "period of restoration".

22.     The Closure Orders resulted from Covered Cause of Loss and caused losses by impairing access to and business functions of Plaintiff's and the other Class Members' Property.

---

[1] Alasdair Sandford, Coronavirus: Half of humanity now on lockdown as 90 countries call for confinement, EuroNews (April 3, 2020), https://www.euronews.com/2020/04/02/coronavirus-in-europe-spain-s-death- toll-hits-10-000-after-record-950-new-deaths-in-24-hou.

23. Upon information and belief, Class Members have had confirmed cases of COVID-19 at their properties and have had to take action to secure and preserve such properties. As of the filing of this Class Action Complaint, Plaintiff estimates that Class Members have suffered several hundreds of millions of dollars of Business Interruption losses alone. These losses are ongoing and could increase substantially depending on the length and ultimate severity of the pandemic and the government response in countries around the world.

24. Traveler's repudiation of coverage is wrongful. Any alleged requirement of direct physical loss of or damage to property" is satisfied by the impairment of the business function of Plaintiffs' and other Class Members' properties. Likewise, Traveler's cannot meet its burden to show that any exclusions apply to the Plaintiffs' Losses Due to the Coronavirus Pandemic and the Closure Orders.

25. On March 11, 2020, the World Health Organization declared that the emerging threat from the novel coronavirus—otherwise known as COVID-19—constituted a global pandemic.

26. Emerging research on the virus and recent reports from the CDC indicate that the COVID-19 strains physically infect and can stay alive on surfaces for at least 17 days, a characteristic that renders property exposed to the contagion potentially unsafe and dangerous. Other research indicates that the virus may linger on surfaces for up to four weeks in low temperatures.

27. In response to the pandemic, and the spread of the coronavirus in Chicago and throughout Illinois, Illinois Governor Pritzker issued Executive Order 2020-07 on March 15, 2020 requiring that all bars, restaurants, and movie theaters close to the public beginning on March 16, 2020 and continuing through March 30, 2020.

28. The continuous presence of the coronavirus on or around Plaintiffs' premises has rendered the premises unsafe and unfit for their intended use and therefore caused physical property damage or loss under the Policies.

29. Executive Order 2020-07 was issued in direct response to these dangerous physical conditions, and prohibited the public from accessing Plaintiffs' restaurants, thereby causing the necessary suspension of their operations and triggering the Civil Authority coverage under the Policies. Executive Order 2020-07 specifically states, "the Illinois Department of Public Health recommends Illinois residents avoid group dining in public settings, such as in bars and restaurants, which usually involves prolonged close social contact contrary to recommended practice for social distancing," and that "frequently used surfaces in public settings, including bars and restaurants, if not cleaned and disinfected frequently and properly, also pose a risk of exposure."

30. Governor Pritzker's March 20, 2020 Closure Order (Executive Order 2020-10) closing all "non-essential" businesses in Illinois, including all restaurants and movie theaters, likewise was made in direct response to the continued and increasing presence of the coronavirus on property or around Plaintiffs' premises.

31. Like the March 15, 2020 Closure Order, the March 20, 2020 Order prohibited the public from accessing Plaintiffs' restaurants, thereby causing the necessary suspension of their operations and triggering the Civil Authority coverage under the Policies.

32. As a result of the Closure Orders, the Plaintiffs have each suffered substantial Business Income losses and incurred Extra Expense. The covered losses incurred by Plaintiffs and owed under the Policies is increasing every day, but are expected to exceed $10 million dollars. As a result of these catastrophic losses, many of the Plaintiffs have been forced to furlough their workers and may have to close some or all of their locations permanently.

33. Following the March 15, 2020 Closure Order, the Plaintiffs each submitted a claim to Traveler's requesting coverage for their business interruption losses promised under the Policies (collectively, the "Closure Order Claims").

34. Traveler's has denied each of the Closure Order Claims, either verbally or in writing. See "Exhibit A."

## IV. CLASS ACTION ALLEGATIONS

35. Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly situated.

36. Plaintiff seeks to represent a Class defined as all persons and entities in the United States with claims for Property Damage coverage and/or Deluxe Business Income (and Extra Expense Coverage), including persons and entities that:

(a) incurred reasonable and necessary costs to temporarily protect or preserve insured property erty due to actual or immediately imminent insured direct physical loss or damage due to COVID-19; or

(b) suffered a suspension of business related to COVID-19, at premises covered by the Policy; or

(c) incurred Extra Expense that they would not have incurred if there had been no direct physical loss or damage to the insured property, or to temporarily continue as nearly normal as practicable the conduct of their business; or

(d) sustained losses caused by action of a civil authority due to the Closure Orders; or

(e) sustained losses caused by impaired ingress or egress due to COVID-19 or the Closure Orders; or

37. Excluded from the Class are Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the

Court staff assigned to this case and their immediate family members. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

38. This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

39. **Numerosity—Federal Rule of Civil Procedure 23(a)(1).** The members of the defined Class are so numerous that individual joinder of all Class Members is impracticable. While Plaintiff is informed and believes that there are thousands of members of the Class, the precise number of Class Members is unknown to Plaintiff but may be ascertained from Defendant's books and records. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

40. **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting only individual Class Members, including, without limitation:

   (a) Traveler's issued the all-risk Policy in exchange for payment of premiums by Plaintiff and the Class;

   (b) whether the Class suffered a covered loss based on the Policy;

   (c) whether Traveler's wrongfully repudiated all claims based on COVID-19 and the Closure Orders;

   (d) whether Traveler's Property Damage – Deluxe Business Income (and Extra Expense) coverage applies to business losses caused by COVID-19;

   (e) whether Traveler's Business Interruption coverage applies to a suspension of business caused by the Closure Orders;

   (f) whether Traveler Extra Expense coverage applies to business losses caused by COVID-19 and the Closure Orders;

  (g)  whether Traveler's Civil Authority coverage applies to a suspension of business due to the Closure Orders;

  (h)  whether Traveler's Ingress/Egress coverage applies to business losses from impaired access due to COVID-19;

  (i)  whether Traveler's has breached its contract of insurance through a blanket repudiation of all claims based on business interruption, business losses, costs or closures related to COVID-19 and the Closure Orders; and

  (j)  whether Plaintiff and the other Class Members are entitled to an award of reasonable attorney fees, interest and costs.

  41.  **Typicality—Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class Members' claims because Plaintiff and the other Class Members are all similarly affected by Defendant's refusal to pay under its Deluxe Business Income (and Extra Expense) Coverage Form, Civil Authority Coverage, and Ingress/Egress Coverage.. Plaintiff's claims are based upon the same legal theories as those of the other Class Members. Plaintiff and the other Class Members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

  42.  **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because Plaintiff's interests do not conflict with the interests of the other Class Members whom they seek to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiff intends to prosecute this action vigorously. The interests of the above-defined Classes will be fairly and adequately protected by Plaintiff and their counsel.

43. **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).** Plaintiff seeks class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Business Income (and Extra Expense) Coverage, Civil Authority Coverage, and Ingress/Egress Coverage. The prosecution of separate actions by individual Class Members would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class Members, who are not parties to this action, to protect their interests.

44. **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant acted or refused to act on grounds generally applicable to Plaintiff and the other Class Members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class Members.

45. **Superiority—Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## COUNT I
## DECLARATORY JUDGMENT

46. Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth in paragraphs 1–45 above.

47. Plaintiff brings this Count individually and on behalf of the Class.

48. Each Policy is an insurance contract under which Traveler's was paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing them to close their businesses.

49. Plaintiffs have complied with all applicable provisions of the Policies, including payment of the premiums in exchange for coverage under the Policies.

50. Traveler's has arbitrarily and without justification refused to reimburse Plaintiffs for any losses incurred by Plaintiffs in connection with the covered business losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

51. An actual case or controversy exists regarding Plaintiffs' rights and Traveler's obligations under the Policies to reimburse Plaintiffs for the full amount of losses incurred by Plaintiffs in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

52. Pursuant to 28 U.S.C. § 2201, Plaintiffs seek a declaratory judgment from this Court declaring the following:

  (a) Plaintiffs' losses incurred in connection with the Closure Orders and the and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the Policies;

  (b) Traveler's has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiffs' losses by issuing blanket coverage denials without conducting a claim investigation as required under Illinois law; and

  (c) Traveler's is obligated to pay Plaintiffs for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders during the four-week indemnity period and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## COUNT II:
## BREACH OF CONTRACT

53. Plaintiffs incorporate by reference, as if fully set forth herein, the facts set forth in paragraphs 1–45 above.

54. Plaintiff brings this Count individually and on behalf of the Class.

55. Each Policy is an insurance contract under which Traveler's was paid premiums in exchange for its promise to pay Plaintiffs' losses for claims covered by the Policy, such as business losses incurred as a result of the government orders forcing them to close their businesses.

56. Plaintiffs have complied with all applicable provisions of the Policies, including payment of the premiums in exchange for coverage under the Policies, and yet Traveler's has abrogated its insurance coverage obligations pursuant to the Policies' clear and unambiguous terms.

57. In the Policy, Traveler's agreed to pay for its Insureds "actual loss of Business Income due to the 'necessary' suspension of your 'operations' during the 'period of restoration'".

58. A recoverable Business Income loss is "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred, plus continuing normal operating expenses incurred including payroll.

59. The Closure Orders and/or COVID-19 caused direct physical loss and damage to the property of Class Members, requiring suspension of operations at their property. The Losses thus triggered the Business Income loss provision of the Policy.

60. By denying coverage for any business losses incurred by Plaintiffs in connection with the Closure Orders and the COVID-19 pandemic, Traveler's has breached its coverage obligations under the Policies.

61. As a result of Traveler's breaches of the Policies, Plaintiffs have sustained substantial damages for which Traveler's is liable, in an amount to be established at trial.

## COUNT III:
## BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE

62. Plaintiff repeats and realleges Paragraphs 1-45 as if fully set forth herein.

63. Plaintiff brings this Count individually and on behalf of the Class.

64. The Policy is a contract under which Plaintiff paid Traveler's premiums on behalf of the Class, in exchange for Traveler's promise to pay their losses for claims covered by the Policy.

65. In the Policy, Traveler's agreed to pay reasonable and necessary Extra Expense that its Insureds incur during the "period of restoration" that they would not have incurred if there had been no direct physical loss or damage to the property from a Covered Cause of Loss.

66. "Extra Expense" includes "expenses to avoid or minimize the "suspension" of business and to continue operations …"

67. Due to COVID-19 and the Closure Orders, Class Members incurred Extra Expense at their Property.

68. Class Members have complied with all applicable provisions of the Policy and/or those provisions have been waived by Traveler's or Traveler's is estopped from asserting them, and yet Traveler's has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

69. By repudiating coverage for any business losses incurred by the Class in connection with the Closure Orders and the COVID-19 pandemic, Traveler's has breached its coverage obligations under the Policy.

70. As a result of Traveler's breach of the Policy, the Class has sustained substantial damages for which Traveler's is liable, in an amount to be established at trial.

## COUNT IV:
## BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE

71. Plaintiff repeats and realleges Paragraphs 1-45 as if fully set forth herein.

72. Plaintiff brings this Count individually and on behalf of the Class.

73. The Policy is a contract under which Plaintiff paid Traveler's premiums on behalf of the Class, in exchange for Traveler's promise to pay their losses for claims covered by the Policy.

74. In the Policy, Traveler's agreed to pay for losses by its Insureds for losses sustained by action of civil authority that prohibits access to the property.

75. The Closure Orders triggered the Civil Authority provision of the Policy.

76. Class Members have complied with all applicable provisions of the Policy, and/or those provisions have been waived by Traveler's, or Traveler's is estopped from asserting them, and yet Traveler's has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

77. By repudiating coverage for any business losses incurred by the Class in connection with the Closure Orders and the COVID-19 pandemic, Traveler's has breached its coverage obligations under the Policy.

78. As a result of Traveler's breach of the Policy, the Class has sustained substantial damages for which Traveler's is liable, in an amount to be established at trial.

## COUNT V:
## BREACH OF CONTRACT – INGRESS/EGRESS COVERAGE

79. Plaintiff repeats and realleges Paragraphs 1-45 as if fully set forth herein.

80. Plaintiff brings this Count individually and on behalf of the Class.

81. The Policy is a contract under which Plaintiff paid Traveler's premiums on behalf of the Class, in exchange for Traveler's promise to pay their losses for claims covered by the Policy.

82. In the Policy, Traveler's agreed to pay for Ingress/Egress losses due to impairment of ingress to or egress to the described premises.

83. The Ingress/Egress coverage applies whether or not the Covered Property is damaged, "provided that such impairment is caused by direct physical loss or damage by a Covered Cause of Loss to property that is within a mile of the described premises."

84. The Closure Orders triggered the Ingress/Egress provision of the Policy.

85. Class Members have complied with all applicable provisions of the Policy, and/or those provisions have been waived by Traveler's, or Traveler's is estopped from asserting them, and yet Traveler's has abrogated its insurance coverage obligations pursuant to the Policy's clear and unambiguous terms.

## V. REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all Class Members, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

(a) Entering an order certifying the proposed Class, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Class;

(b) Entering judgment on Counts II-V in favor of the Class and awarding damages for breach of contract in an amount to be determined at trial;

(c) Entering declaratory judgment on Counts I in favor of the Class, as follows;

    i.      Class Members' Property Damage, Deluxe Business Income (and Extra Expense) Property losses stemming from the COVID-19 pandemic are insured losses under the Policy;

    ii.     Class Members Business Income and Extra Expense losses, and their Civil Authority, and Ingress/Egress, losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the Policy, as are the expenses reasonably and necessarily incurred by the Class to reduce their suspension of business

    iii.    Traveler's is obligated to pay for the foregoing losses incurred and to be incurred by the Class related to COVID-19, the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic, and to pay the Class the expenses reasonably incurred by them to reduce their suspension of business;

(d)    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

(e)    Ordering Defendant to pay attorneys' fees and costs of suit; and

(f)    Ordering such other and further relief as may be just and proper.

## VI. JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: June 26, 2020

Respectfully submitted,

FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC

/s/Robert M. Foote, Esq.
Robert M. Foote, Esq. (#03124325)
Kathleen C. Chavez, Esq. (#06255735)
Matthew J. Herman, Esq. (#06237297)
FOOTE, MEILKE, CHAVEZ & O'NEIL, LLC
10 West State Street
Suite 200
Geneva, IL 60134
Telephone: (630) 232-7450
rmf@fmcolaw.com
kcc@fmcolaw.com
mjh@fmcolaw.com