UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE RIVERWALK SEAFOOD GRILL INC., d/b/a RIVERSIDE BANQUETS, individually and on behalf of all other similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | 20 C 3768 |
| v. | ) ) | Judge Charles P. Kocoras |
| TRAVELERS CASUALTY INSURANCE COMPANY OF AMERICA, | ) ) ) ) | |
| Defendant. | ) | |

## ORDER

Before the Court is Charter Oak Fire Insurance Company's ("Charter Oak")[1] motion to dismiss The Riverwalk Seafood Grill Inc.'s ("Riverwalk") Complaint under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Charter Oak's motion.

## STATEMENT

For the purposes of this motion, the Court accepts as true the following facts from Riverwalk's Complaint. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665-66 (7th

---

[1] Charter Oak argues that Riverwalk improperly sued Traveler's Casualty Insurance Company of America ("Travelers") because the operative insurance policy lists Charter Oak, not Travelers, as Riverwalk's insurer. The Court acknowledges Charter Oak's argument and that Riverwalk did address it in response to Charter Oak's motion. No substantive legal issue turns on this difference, but the Court will nevertheless refer to the Defendant as "Charter Oak" out of respect for what appears to be a separate and distinct legal entity.

Cir. 2013). All reasonable inferences are drawn in Riverwalk's favor. *League of Women Voters of Chicago v. City of Chicago*, 757 F.3d 722, 724 (7th Cir. 2014).

Riverwalk owns and operates a restaurant and banquet hall in Kane County, Illinois. This proposed class action is brought against Defendant Travelers under an insurance policy ("Policy") issued by Charter Oak. Plaintiff specifically seeks coverage for business losses due to COVID-19 under three distinct Policy provisions.

Riverwalk first seeks coverage under the Policy's Business Expense provision, which reads in the Complaint as follows:

> We will pay for:
>
> • The actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration"; and
>
> • The actual Extra Expense you incur during the "period of restoration"; caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income and Extra Expense Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

Riverwalk next seeks coverage under the Policy's Civil Authority provision, which reads in the Complaint as follows:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and the actual Extra Expense you incur caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> • Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than 100 miles from the damaged property; and

• The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

Riverwalk finally seeks coverage under the Policy's Ingress or Egress provision, which reads in the Complaint as follows:

(1) You may extend the insurance provided by this Coverage Form for:

(a) The actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration"; and

(b) The actual Extra Expense you incur during the "period of restoration"; to apply to the actual amount of such loss of Business Income and Extra Expense that you incur when ingress to or egress from the described premises is prevented (other than as provided in the Civil Authority Additional Coverage).

(2) The prevention of ingress to or egress from the described premises must be caused by direct physical loss or damage by a Covered Cause of Loss to property that is away from, but within 1 mile of the described premises, unless a different number of miles is shown in the Declarations.
. . .

In addition to these provisions, the Policy has a clear Virus Exclusion, which provides that Charter Oak "will not pay for loss or damage caused ***directly or indirectly***" by "*[a]ny virus*, bacterium, or other microorganism that induces or is capable of inducing physical distress, illness or disease." Dkt. 12-1 at 42, 44 (emphasis added). Additionally, "[s]uch loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage occurs." *Id.* at 44.

In this motion, Charter Oak moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6). A motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the facts alleged in the complaint and not the merits of the case. Fed. R. Civ. P. 12(b)(6); *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 878 (7th Cir. 2012). The Court accepts as true all well pled facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). The factual allegations in the complaint must state a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

The complaint does not require detailed factual allegations but must provide sufficient factual support to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must provide a defendant with fair notice of the claim's basis and also must be facially plausible. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible if the complaint contains sufficient alleged facts that permit the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mere conclusory statements or a "formulaic recitation of the elements of a cause of action" are insufficient pleadings to overcome a Rule 12(b)(6) motion to dismiss. *Id*. at 678-79.

Additionally, "in Illinois, the construction of an insurance policy is a question of law. An insurance policy is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a

4

purpose. If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning. However, a policy provision is not rendered ambiguous simply because the parties disagree as to its meaning." *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 2020 WL 5630465, at *2 (N.D. Ill. 2020) (cleaned up).

Applying these principles, the plain language of the Virus Exclusion is dispositive here and requires the Court to dismiss Riverwalk's Complaint. Indeed, COVID-19 is plainly "*any* virus" that "directly or indirectly" caused Riverwalk's damages. Hence, it is unsurprising that "federal courts interpreting virtually identical Virus Exclusions have nearly unanimously determined that these exclusions bar coverage of similar claims." *N&S Rest. LLC v. Cumberland Mut. Fire Ins. Co.*, 2020 WL 6501722, at *4 (D.N.J. 2020) (collecting cases). These courts have dismissed claims where policyholders claimed their losses resulted either from the presence of the virus or from governmental order intended to slow the spread of the virus. These courts were right to dismiss these claims in the face of virus exclusions.

Riverwalk's rebuttal arguments do not change the Court's conclusion. Initially, the Court notes that Riverwalk is correct that the Policy language "must be clear and free from doubt" before we rely on and apply an exclusionary clause. *Econ. Preferred Ins. Co. v. Grandadam*, 275 Ill. App. 3d 866, 869 (1995). Riverwalk is also correct that the burden of persuasion lies with Charter Oak to prove that an exclusion applies. *Addison Ins. Co. v. Fay*, 232 Ill. 2d 446, 453 (2009). But, even in the face of these

rules, Riverwalk's arguments fail because there is simply no doubt as to the meaning of the Virus Exclusion.

At first, Riverwalk argues that the Policy is ambiguous because it could have been more specific. For example, in *Meyer Natural Foods, LLC v. Liberty Mut. Fire Ins. Co.*, the operative policy covered the "actual or suspected presence or threat of any virus," including a "pandemic." 218 F. Supp. 3d 1034, 1038 (D. Neb. 2016). This argument fails for two reasons. First, the Policy's Virus Exclusion is unambiguous. The Virus Exclusion covers "*any* virus" and claims arising "directly or indirectly" from that virus. That language is clear, sweeping, and all-encompassing. After all, when "[r]ead naturally," the word 'any' has an expansive meaning. . ." *United States v. Gonzales*, 520 U.S. 1, 1 (1997). Our conclusion is in line with other courts, which have concluded that "the Virus Exclusion is only subject to one reasonable interpretation: that coverage does not extend to any claim premised on virus-induced damage, regardless of the virus's magnitude." *Boxed Foods Co., LLC v. California Capital Ins. Co.*, 2020 WL 6271021, at *5 (N.D. Cal. 2020); *see also Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 6503405, at *8 (S.D. Miss. 2020) (similar).

Second, Riverwalk's argument amounts to linguistic sophistry with illogical consequences. The mere existence of more explicit language cannot obligate the Court to conclude that the instant language is ambiguous. Otherwise, all contractual language would be ambiguous as language could always be more specific.

Riverwalk's argument that the Virus Exclusion applies only for losses caused directly by viral contamination also fails. Otherwise, the prefatory language of "directly or *indirectly*" would have no meaning, which is an untenable legal position. *Boxed Foods*, 2020 WL 6271021, at *5. Because the Virus Exclusion is clear, Riverwalk's coverage argument fails with or without the anti-concurrent causation ("ACC") provision. *E.g., Mark's Engine Co. No. 28 Rest., LLC v. Travelers Indem. Co. of Connecticut*, 2020 WL 5938689, at *5 (C.D. Cal. 2020) (dismissing based on a virus exclusion even without an anti-concurrent causation provision); *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, 2020 WL 6156584, at *5 (C.D. Cal. 2020) (similar).

In any event, Traveler's position is still reinforced by the Policy's ACC provision, which provides that "loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage occurs." Applying the clear terms of this provision, the mere existence of a concurrent cause—such as Governor Pritzker's COVID-19 orders—does not require coverage. This is because the Policy's ACC provision bars recovery "regardless of any other cause."

Riverwalk's argument that this provision might contravene Illinois public policy is well foreclosed by the Illinois Appellate Court's relatively recent ACC decision in *Bozek v. Erie Ins. Group*, 2015 IL App (2d) 150155, ¶ 34. Notably, the court in *Temperature Serv. Co., Inc. v. Acuity* applied *Bozek* to conclude on summary judgment that the insured "met its burden of demonstrating" that an exclusion applies "regardless

7

of any other potentially contributing causes." 2018 WL 1378345, at *7 (N.D. Ill. 2018). The same conclusion is warranted here. This is especially true because Riverwalk has not identified any constitutional or statutory provision or Illinois caselaw that prohibits the application of the ACC clause here.

At bottom, Riverwalk's proposed class action complaint fails because the Virus Exclusion unambiguously precludes coverage. We grant Charter Oak's motion accordingly.

## **CONCLUSION**

For the foregoing reasons, the Court grants Charter Oak's Motion to Dismiss. Because the Virus Exclusion bars all coverage, any further amendment would be futile. Accordingly, this case is dismissed with prejudice. Civil case terminated. It is so ordered.

Dated: 1/7/2021

_____
Charles P. Kocoras
United States District Judge